Good morning. If you're not able to hear me, please interrupt me. We can hear you. Great. I'm Jonathan Grossman for Mr. Espinoza. I'd like to reserve four minutes for rebuttal. In this case, my client is, of course, Mr. Espinoza. Richard Pimentel was tragically shot in the back of the head and killed. He got in a fight earlier that evening, just a couple minutes earlier, with a person named Rene Martinez, whom they have known since childhood. And then what videos and witnesses see is after Martinez... Oh, okay, so they're in a fight. Mr. Espinoza breaks up the fight, or the fight gets broken up. Mr. Espinoza and Martinez do talk to each other, it seems. They know each other. They went to the store together. They go back somewhat separately to an apartment complex across the street. Someone emerges from there and shoots Mr. Pimentel in the back of the head and kills him. And the issue is, was Mr. Espinoza the person? There's videos from all these stores all around, and they show what happened, but no one's able to positively identify my client as being the person who's in these videos. What they do to do the match, among other things, is they have some gang evidence to show this was a gang-motivated crime, the retaliation. But the other thing they do is, what the prosecution does, is they bring Mr. Martinez to the witness stand, even though he said he's not going to testify. He says, you don't have a right not to testify. We've given you immunity. Under Catholic law, you have to testify. He's refusing to testify. He's on the stand. They ask him questions. And the prosecutor asks, did you tell Mr. Espinoza to shoot the victim? He's still refusing to answer. The judge actually repeats the question. He's still refusing to answer. And that, ladies and gentlemen, is our Confrontation Clause violation. Now, the court instructs the jury that the question and answer is not evidence, disregarded. But the witness does not have the right not to testify. And what the prosecution uses with that is Mr. Martinez and Mr. Espinoza know each other. You know, they're fellow and they're tight. And Mr. Martinez refused to answer questions. And you could use that. Essentially, you could use that as evidence against Mr. Espinoza. Well, the court not only said to the jury that they could not consider the questions that were asked by the prosecutor, obviously, but also the court struck his whole testimony and, in fact, instructed the jury that you should not consider the testimony or anything that was asked or any responses that he gave by that particular witness. So, obviously, the question becomes, what's your prejudice? The prejudice is because, first of all, the jury is still able to draw inference that Mr. Martinez is not testifying to protect Espinoza. Well, the judge told him he couldn't consider it for any purpose. No, he said you cannot consider the questions and the non-answers. But he also told the jury that Mr. Martinez did not have the right not to testify. That's a double negative. Yes, I understood, but I was just going to say, I think under California law, if I'm not mistaken from my days when I was a state court judge, that the judge could have instructed, in this situation where he had been granted use immunity, that the judge could have said you can draw an adverse inference regarding his testimony, his refusal to answer questions. He didn't do that. Instead, he was very cautious and said, you know, you can't consider this at all. He didn't say you cannot consider this at all because he also added the witness did not have the right to testify, and the prosecutor then says the witness didn't have the right not to testify, and so he's protecting Espinoza was his argument. And the reason why that's a violation is because of the Douglas case. In Douglas, the witness refused to testify. The prosecutor asked a bunch of questions, which seemed to be his confession, read the confession, asking every now and then, is that what he said? And, of course, he's refusing to answer any questions. Is that what he said? Is that what he said? He refuses to answer any questions. In that case, the jury was also told the question and the non-answer is his not testimony. But the Confrontation Clause violation occurred because the jury is led to believe that the reason why the person is not testifying is because he's protecting the defendant, that what he would say would incriminate the defendant. But there's no way to confront him about that. So that's the Confrontation Clause violation. And the district court recognized that. There's also the other case that says, well, say something during opening argument before you get any evidence. Would you expect the evidence to show? And then the witness refuses to testify. That was not a Confrontation Clause violation. Is there a difference? We're kind of in this, both sides have argued, kind of a bookend case where you've got Frazier and Douglas. And it's a little more than this and a little less than that. But let me ask you specifically about Douglas where the district court said it doesn't rise to that level. But in the comments you just made, isn't there a distinction between the reason that someone might not testify in this case in terms of protection versus the claim that there could be a constitutionally impermissible inference of the truth of what the statement was, particularly where the court says, ignore it all. So isn't there really a difference here in terms of how Douglas arose and the context that you're talking about now? I do not believe there is a distinction. In Douglas, the big distinction that the district court relied on, and I think overall they did a good analysis, but I think where they went wrong was with this, is that there was a long apparent confession that the prosecutor read to the jury, and this was just a couple of questions. But where I think the problem is, is this. This wasn't just non-substantive questions. The question, did you tell the defendant, Mr. Espinosa, to shoot the victim, amounts to a full confession. It wasn't as long as a page or a couple pages long. It was one sentence. But it is a full confession, just like it was in Douglas. In other words, that statement alone is enough to fully incriminate both the witness and the defendant. And so what you have in front of the jury is, why is this person being paraded in front of me so he wouldn't answer questions, and then the prosecutor is telling me I could use this because he's trying to protect the defendant. The only way you get there, really, is because of the way they smuggled in the confession. Because otherwise, we don't know why he's not testifying. It could be because he doesn't believe that it won't be used against him. It could be because it's going to be used as a parole violation because he was on parole at the time. It could be because he's protecting someone else. If he were to answer the questions truthfully, maybe he's going to be incriminating Skippy, his buddy or whoever. So we really don't know why. It's just speculation. The reason why it becomes apparently a reasonable inference is in the context of the smuggled confession and the guise of trying to get him to answer any questions. And that's why I say this case is no different than in Douglas. I think this is prejudicial because, as I said in the beginning, they really don't have a way of identifying who the shooter is. They have lots of witnesses. They have lots of videos. There was some pretty strong circumstantial evidence, wasn't there? Circumstantial evidence. And you can... Jurors are told circumstantial evidence is as good as direct evidence. Yes. And that's true as long as there's not a reasonable inference towards guilt in any of those chains. It is true that nobody could identify the shooter, but I thought his general description or the general description of the shooter, the assailant, matched or closely approximated the defendant. Is that not right? For one or two of the witnesses, that was true. For other witnesses, they varied more. Some had the gunman in the mid-30s. So there were a couple of people who said this looks like this description matches. More accurately, they described the shooter somewhat closely resembling the defendant, but no one could ever say, okay, was that the person? No. No one could make that identification. So you have the defendant in the courtroom. There's no identification. People looked at the video surveillance at the market where the person was, where the fight was before the shooting, and no one was able to say with certainty, yeah, that was the person. This all occurs within like five minutes, right? Right. So the fight, the conversation, the defendant theoretically goes into the house, comes running out. The shooting happens within three minutes, and then within the next two minutes, this assailant goes back to the apartment house and then leaves. This is all really close in time. Doesn't that create a real close link to the defendant? It creates an inference. I agree. But it's still circumstantial, and here's the weakness of the evidence. It's not a house. It's a large apartment complex. And we have evidence that Martinez and Espinosa are gang members or other gang people, and they both are dating these sisters. The sisters have this younger brother. There's a group of them. If we use the prosecution gang evidence, assuming this was a gang-related shooting, because the original fight was not, apparently, anyone who's a gang member in the complex would have a motive to do the shooting. So what happens is Martinez disappears into the complex. Mr. Espinosa disappears into the complex. Somebody emerges afterwards and follows them and tells them to shoot them. That person then goes back into the complex. Martinez and Espinosa leave. That's not necessarily the gunman. There is possibly an inference of it. I absolutely agree. But it's circumstantial, and there could be reasonable explanations to the contrary. This is why the prosecution needed the gang evidence to start with, and this is why they needed Mr. Martinez to try to incriminate Mr. Espinosa, and this is why the prosecution relied on that during the argument and during the end of the trial, because what you have really is the biggest weakness is you have all this video, all these witnesses, and no one's actually able to say this is the person. It's some Hispanic person in his mid-20s, maybe later, wearing gray or red clothes, and that kind of doesn't match. Those descriptions change. So is there some evidence that maybe he was it? Yes. But was there enough that the prosecution felt comfortable they could convict him of the trial? No. That's why they did this in the first place, and that's where the Confrontation Clause problem occurs. And I'll reserve the remainder of my time for rebuttal. Thank you. Okay. Thank you, counsel. We'll hear from the State. Good morning. May it please the Court. I believe there is a distinction here between the situation in Douglas, which involved the prosecutor essentially reading into the record the entire confession of the witness that went to the facts of the case. And here, my understanding of Appellant's argument is that the prosecutor's question to Martinez about whether he ordered Appellant to shoot the victim similarly involved the evidence or facts of the case. That situation is different from what I believe Appellant's other argument is, which involves Martinez's just flat refusal to testify. And under California law, you can draw a negative inference from just the fact that the witness was refusing to testify. By California law, that doesn't allow the jury to consider the substance of any testimony, the facts. So that's sort of the distinction I'm seeing. With respect to the prosecutor's question in this case, it was very different from Douglas. Like I said, Douglas, the prosecutor, read an entire confession into the record, and the jury was not instructed that they could not consider that as evidence in the case. Roberts. So what was the purpose of that question? In this case, the prosecutor said that he wanted to test the witness. The witness here, that's another distinction between Douglas and here. Douglas, the witness, had a Fifth Amendment privilege not to testify. Here, Martinez did not. So the prosecutor wanted to test him by asking a few questions to see if he would, in fact, answer some questions. And he believed that he, I think, could startle Martinez into answering that question as sort of a gut reaction, like to deny his own involvement. So that's my understanding from the record as to why the prosecutor asked that question. Maybe you could just explain to me, when you read kind of what happened in the courtroom, I gather before Martinez was called to the stand, he hadn't communicated or it had not been communicated to the judge that he was not going to answer any question, or am I misreading that? I'm not. Did the judge know when Martinez took the stand that he wasn't going to answer any questions? I believe he might have known that. So is that, under California law, is that okay? Under California law, yes. A jury can view, a witness who does not have a Fifth Amendment privilege to testify, a jury can view that witness's refusal. And there's no clearly established United States Supreme Court law saying you can't do that. I think at the beginning of his testimony, or at the beginning of the questions that were asked of him, this witness said he understands that he had immunity, but he didn't accept it. He refused the immunity, basically. That was at the very beginning of his testimony, wasn't it? And then the questions continued on. I believe you are correct about what the witness said on the stand. The problem is he did execute an immunity agreement before he testified, so he had already done that. He got up on the stand and said, you know, I'm not going to do that. Oh, so there was an immunity agreement as opposed to something that was actually required of him? Yes, he had an immunity agreement, but he decided that he didn't want to testify after all. And he was held in contempt of court for refusing to testify, and he was warned of that beforehand. So let me ask you this. I mean, the trial judge took pretty clear steps to admonish the jury not to consider, you know, some of the question, I guess, the prosecutor's questions. Yes. Right? Correct. That also seems to suggest that the judge might have, you know, simply, okay, he's not going to answer anything. He's off the witness stand. This is ridiculous. Yes, I believe that the trial judge was just trying to be very cautious after that happened. And like you said, he not only instructed the jury that the prosecutor's questions couldn't be considered as evidence, but he struck the entire exchange and said that they were not even to speculate about how Martinez may have answered. So, you know, and we presume that the jury follows their instructions. But then that kind of goes into, you know, strike the testimony, don't consider it, but then let the prosecutor argue what the implication of the absence of testimony was. It just strikes me that there's some inherent contradiction there in terms of what happened, isn't there? I believe that. What's the jury to make of that? I believe that goes back to sort of the distinction between the jury is not to consider a substantive question dealing with a discrete fact of the crime versus just the general refusal, the fact of refusing to testify, that they can draw a negative inference from that. And I did want to point out that this proper inference under California law, that you can draw a negative inference from a witness's refusal to testify when they don't have a valid Fifth Amendment, you know, privilege to do so. This is no different in kind. In some inferences that the prosecutor argued, the jury could draw from Martinez's girlfriend's testimony and her statements to police and her brother's testimony and his statements to police, in which both tried to hide the fact that Espinosa was there that day. And the reasonable inference from that was that they, too, knew Espinosa was involved and they were trying to protect him. So this is just — this negative inference under California law is sort of the similar — is the same type of evidence that was already before the jury with respect to two other witnesses. So this was not really anything, you know, earth-shattering. But the question here comes down to whether the State court's ruling in this case was contrary to an unreasonable application of clearly established law. And we have Douglas on one hand, which we have an entire confession read into the record, and the jury could consider it for evidentiary purposes. And that was the only, only direct evidence that the defendant in that case was the shooter. We have that on one side. Our facts — the facts of our case, it was one question. The jury was instructed, you can't consider that as evidence. On the other side of the spectrum, we have Frazier, where the prosecutor, an opening statement put in the expected statement of the witness. The witness refused to testify. And the judge instructed the jury they could not consider any statements made by the prosecutor. So this case is more similar to that. When you have very general principles by the Supreme Court, and this case falls, as the district court judged, somewhere in between, I would argue this is very much closer to Frazier than Douglas. The State court was free to make the ruling that it did. And that's the key here, and that's the problem appellant has not been able to overcome in this case. As far as prejudice, again, it was one question. Jury was instructed to disregard it. And unlike Douglas, that was not the only direct evidence that Espinosa was the shooter. This shooting took place within three minutes of Martinez being attacked by the victim, within two minutes of Espinosa and Martinez conferring in the car, before Espinosa then ran across the street to the apartment complex. It would be virtually impossible for somebody else in that apartment complex that did not know what had transpired between Martinez and the victim to know a fight had occurred, that they needed to grab a gun, they needed to run out. Who else would have known what direction the victim was heading in after the fight and what he was wearing, what he looked like? The shooter ran out of that apartment complex, went exactly in the direction the victim had left him after the victim had left the market, shot him in the back of the head. So that was very strong circumstantial evidence that appellant was the shooter in this case. This case did not fall on that single question by the prosecutor to Martinez. Unless the Court has any further questions, I'm prepared to submit the matter. Okay. Thank you. Thank you. Thank you, counsel. Okay, we have, I think, some time for rebuttal. Martinez knew where Pimitel went and what happened. Martinez went into the apartment complex, I think, before Espinosa. At least they went in separately. Martinez could have told anybody there who was his friend to do whatever he did. You bring Martinez to testify at the witness stand. By the way, they did know before he was going to testify, or before they called him, he was not going to testify, and there was an objection by defense counsel for doing this in the first place because he was not going to testify. So you put Martinez on the stand, and the question is, did you tell Mr. Espinosa to shoot the victim? If you know nothing else, the answer is either yes or it's going to be no. I told Bob to do it or wherever. I mean, Martinez is in a good position to know who he told about the shooting, about the fight, and who to shoot. So is it true that Martinez entered into an immunity agreement? That is, he, in fact, signed the agreement indicating that he would be granted immunity and therefore had no Fifth Amendment concerns with the idea that he would be testifying? And then he changed his mind when he got on the stand? It's my understanding that he was given immunity, not that there was an agreement. It was sort of imposed upon him. But even if he had signed something, he made it clear before he was going to go to the witness stand that he was not going to testify. They had a discussion about this. Defense counsel objected. They still brought him out. But you could understand why a prosecutor would, in fact, call a person to testify if that person had signed an immunity agreement indicating that he was basically accepting immunity and, you know, it would be a good faith basis to believe that he's going to answer the questions. If he surprised the prosecutor, that would be one thing. No one here is saying the prosecutor was surprised. Everybody knew before they called in the jury he was not going to answer questions. But even so, you don't start asking for the dynamite question. Did you tell the defendant to shoot the victim after it was clear that he was not answering questions? Let me ask you this. The counsel just said that there is nothing in California law that prohibits or that requires the trial judge to say, even assuming that he knew that Martinez wasn't going to testify, answer any questions. Under California law, the judge can still allow the prosecution to call that witness to the stand and ask some questions, correct? I think that is correct under California law. And there's nothing from the United States Supreme Court that says you can't do that. Not to that per se. But what Douglas does tell us is he can't bring someone to the stand and then ask them basically, did you and the co-defendant commit this crime together, knowing he's not going to be answering the question. And that's what would happen here. Okay. In other words, the problem isn't necessarily because you could have a witness who halfway through the testimony suddenly decides to start declaring fifth for no good reason. You can infer something about that. That's not the problem. The problem here is the Confrontation Clause problem of asking basically the confession, did you tell the defendant to shoot the person? And there's no opportunity to cross-examine that with the jury. Even being told it's not evidence, it's still in the mind. You cannot ring the bell. Okay. Thank you very much. Thank you. To both counsel, thank you. We appreciate your arguments this morning. And we will submit the case at this time. And that ends our session for today. All rise.
judges: McKEOWN, PAEZ, Sessions